**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

JACOB MOSKOWITZ,

                        *Plaintiff*,

           -against-

PRINCIPAL LIFE
INSURANCE COMPANY,

                  *Defendants*.

Docket No.: 21-cv-03030-ALC-SN

---

## MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO DISMISS

---

**LIPSIUS-BENHAIM LAW, LLP**
80-02 Kew Gardens Road, Suite 1030
Kew Gardens, New York 11415
Telephone: 212-981-8440
Fax: 888-442-0284
*Attorneys for Plaintiff Jacob Moskowitz*

Of Counsel:
      Ira S. Lipsius
      Phillip Manela

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ……………………………………………………… ii

PRELIMINARY STATEMENT………………………………………………….  1

LEGAL ARGUMENT………………………………………………………….  2

1.  Plaintiff's Action to Recover on a Wrongfully
    Terminated Policy is Not Time Barred…………………………………………  2

2.  The Amended Complaint Provides Notice of and States a Claim……………………..  4

3.  Principal Life Did Not Comply With the Notice Requirements of the Statute………..  6

    a)  *The Grace Notice Demanded an Incorrect and Excessive Amount* ………………..6

    b)  *N.Y. Ins. Law §3211(a) and (b) Apply to Renewable One Year Term Policies*………9

4.  The Policy Did Not Lapse Following One Year From the Purported Default ………   10

CONCLUSION …………………………………………………………………19

# <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

**Cases**

*Aborn v. Mason*
1 F. Cas. 37 (C.C.S.D.N.Y. 1878): ........................................................................... 14

*Ashcroft v. Iqbal*
556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ............................................. 4

*Baumann v. Pinckney*
118 N. Y. 604, 23 N. E. 916 (1890) ...................................................................... 14, 15

*Bell Atl. Corp. v. Twombly*
550 U.S. 544 (2007) ............................................................................................... 4

*Blau v. Allianz Life Ins. Co. of N. Am.*
No. 14-CV-3202 (NGG) (VMS), 2018 U.S. Dist. LEXIS 25936, 2018 WL 949222
(E.D.N.Y. Feb. 16, 2018), appeal dismissed, No. 18-699 (2d Cir. July 11, 2018) ........................ 7

*Blumenberg v. Aviva Life & Annuity Co. of N.Y.*
41 Misc. 3d 1207(A) (Sup. Ct. Kings Co. 2013) ............................................................ 6

*Brinley v. Nevins*
162 A.D. 744, 147 N.Y.S. 985 (1st Dep't 1914) ........................................................... 13

*Buccino v. Continental Assurance Co.*
578 F. Supp. 1518 (S.D.N.Y. 1986) ........................................................................... 3

*Clarke v Rodriguez*
16 N.Y.3d 815 (2011) ............................................................................................ 13

*Cohen v Companion Life Ins. Co.*
2017 N.Y. Misc. LEXIS 2403, *3, 2017 NY Slip Op 50832(U),
56 Misc. 3d 1202(A) (N.Y. Sup., Nassau County 2017) ................................................... 10

*Falco v. Unum Provident Corp.*
2007 U.S. Dist. LEXIS 23739, 2007 WL 1014568 (E.D.N.Y. Mar. 30, 2007) ............................. 3

*Goodman v. Marcol, Inc.*
261 N.Y. 188 (1933) .............................................................................................. 11

*Grad v. Roberts*
14 N.Y.2d 70 (1964) .......................................................................................................... 11

*Halberstam v. Allianz Life Ins. Co. of N. Am.*
2017 U.S. Dist. LEXIS 222734, 2017 WL 10187689 (E.D.N.Y. 2017): .................................... 10

*Halberstam v. Allianz Life Ins. Co. of N. Am.*
349 F. Supp. 3d 164 (E.D.N.Y. 2018): ............................................................................. 7, 8, 10

*In re Blue Dog*
540 B.R. 67 (Bankr. S.D.N.Y. 2015) ...................................................................................... 12

*In re Preston's Will*
29 N.Y.2d 364 (1972). .............................................................................................................. 9

*Jakobovits v. Allianz Life Ins. Co. of N. Am.*
2017 U.S. Dist. LEXIS 111471, 2017 WL 3049538 (S.D.N.Y. 2017) ........................................ 3

*Keiler v. Harlequin Enters. Ltd.*
751 F.3d 64 (2d Cir. 2014) ......................................................................................................... 4

*Kelly v. Sec. Mut. Life Ins. Co.*
186 N.Y. 16, 78 N.E. 584 (1906) ............................................................................................. 16

*Kenyon v. Nat'l Life Ass'n of Hartford*
39 A.D. 276, 57 N.Y.S. 60 (4th Dep't 1899) ........................................................................... 17

*Kooleraire Serv. & Installation Corp. v. Bd. of Ed. of City of New York*
28 N.Y.2d 101 (1971) .......................................................................................................... 11, 12

*Lebovits v. PHL Variable Ins. Co.*
199 F. Supp. 3d 678 (E.D.N.Y. 2016) .................................................................................. 7, 11

*Lebovits v. PHL Variable Ins. Co.*
2014 U.S. Dist. LEXIS 42552, 2014 WL 1312073 (E.D.N.Y. Mar. 28, 2014) ........................... 3

*McDougall v. Provident Sav. Life Assur. Socy. of N.Y.*
135 N.Y. 551, 32 N.E. 251 (1892) ............................................................................................. 9

*New York Life Ins. Co. v. Eggleston*
96 U.S. 572 (1877) ..................................................................................................................... 9

*Pike v. N.Y. Life Ins. Co.*
72 A.D. 3d 1043 (2d Dep't 2010) ................................................................. 3

*Primeau v. Nat'l Life Ass'n*
28 N.Y.S. 794 (Gen. Term 1894), *aff'd*, 144 N.Y. 716, 39 N.E. 858 (1895)................................ 16

*Reed v. Provident Sav. Life Assur. Soc. of New York*
190 N.Y. 111, 82 N.E. 734 (1907)................................................................. 16

*Reich v. Bankers Life & Casualty Co.*
99 A.D.2d 457 (1st Dep't 1984) ................................................................. 2

*Reinhardt v. Reinhardt*
204 A.D.2d 1028 (4th Dep't 1994),................................................................. 12

*Robinson v. Mut. Reserve Life Ins. Co.*
182 F. 850 (S.D.N.Y. 1910), *aff'd*, 189 F. 347 (2d Cir. 1911)................................. 16

*Shaw v. Republic Life Ins. Co.*
69 N.Y. 286 (1877) ................................................................. 14, 15, 16

*Simmons v. Abruzzo*
49 F.3d 83 (2d Cir. 1995) ................................................................. 4

*Speziale v National Life Ins. Co.*
159 Fed Appx. 253 (2d Cir. 2005) ................................................................. 9

*Stokes v. Mackay*
147 N. Y. 223, 41 N. E. 496 (1895)................................................................. 14

*Sullivan v. Indus. Ben. Ass'n*
26 N.Y.S. 186 (Gen. Term 1893)................................................................. 15

*Te Bow v. Washington Life Ins. Co.*
59 A.D. 310, 69 N.Y.S. 289 (3rd Dept. 1901), *aff'd*, 172 N.Y. 623, 65 N.E. 1123 (1902) .......... 17

*Thompson v. Postal Life Ins. Co.*
226 N.Y. 363, 123 N.E. 750 (1919)................................................................. 2, 3

*Walsh v. Kelly*
49 N.Y.2d 959 (1980) ................................................................. 11

*Weiss v. Lincoln Nat'l Life Ins. Co.*
2016 U.S. Dist. LEXIS 126090, 2016 WL 4991533 (E.D.N.Y. 2016) .......................................... 7

*Wynder v. McMahon*
360 F.3d 73 (2d Cir. 2004)........................................................................................................ 4

*Zeligfeld v Phoenix Life Ins. Co.*
975 N.Y.S.2d 370 (NY Sup., Kings County 2013)...................................................................... 6

*Zeligfeld v Phoenix Life Ins. Co.*
992 N.Y.S.2d 162 (NY Sup., Kings County 2014)...................................................................... 7

**Statutes**

CPLR § 214(2) ........................................................................................................................ 3

Fed. R. Civ. P. 12(b)(6)............................................................................................................ 1

Fed. R. Civ. P. 8(a)(2)............................................................................................................. 4

New York Insurance Law §3211 ....................................................................................... passim

**Treatises**

45 C.J.S. Insurance §697 (2003)................................................................................................ 9

## <u>PRELIMINARY STATEMENT</u>

Plaintiff Jacob Moskowitz ("Plaintiff") respectfully submits this Memorandum of Law in opposition to the Motion by defendant Principal Life Insurance Company ("Principal Life") to Dismiss Plaintiff's Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6).

Principal Life moves to dismiss the Amended Complaint on four grounds.  Each of those grounds are without merit.

First, the action is not time barred by the two year limitations period, because §3211(d) does not bar a lawsuit to recover the death benefit of a policy that was <u>wrongfully</u> terminated more than two years earlier.

Second, the Amended Complaint contains sufficient factual allegations to give Principal Life fair notice to enable it to answer and prepare for trial.

Third, Plaintiff has a viable claim because Principal Life's grace notice demanded an incorrect and excessive amount to avoid the lapse of the Policy.  The amount demanded was close to 400% of the actual amount required to avoid a lapse.  Such a grace notice is void under New York statutory and case law.

Fourth, while an insurer may lapse a policy after a year of non-payment, that rule does not apply in our case where: (a) Principal notified the Policy owner that the Policy had lapsed and no premium would be accepted without new underwriting, and (b) Principal rejected the Policy owner's actual attempt to pay premium.

For these reasons, as set forth more fully below, Principal Life's Motion to Dismiss should be denied.

## LEGAL ARGUMENT

**1.      Plaintiff's Action to Recover on a Wrongfully Terminated Policy is Not Time Barred**

Principal Life argues that Plaintiff's action to recover on the Policy is time-barred by New York Insurance Law §3211(d), which provides a two year limitations period for the filing of suit to recover on a life insurance policy terminated because of default in the payment of premiums.

However, starting with Justice Cardozo more than a century ago, courts have rejected Principal Life's argument.  The courts have held that §3211(d) does not bar a lawsuit to recover the death benefit of a policy that was <u>wrongfully</u> terminated more than two years earlier. *Thompson v. Postal Life Ins. Co.*, 226 N.Y. 363, 363, 123 N.E. 750 (N.Y. 1919).

In *Thompson*, as in our case, suit was brought to recover the death benefit of a life insurance policy that had been wrongfully forfeited for nonpayment of premium more than two years prior to the insured's death.  226 N.Y. at 369.  Interpreting the predecessor statute of §3211(d), Justice Cardozo, writing for a unanimous Court of Appeals, held that "a forfeited policy" within the meaning of the statute "is one rightfully forfeited. A forfeiture asserted without right leaves the policy intact." *Id*. at 368.  No action to recover the amount of the insurance would lie during the insured's life.  Therefore, no such right of action was barred by limitation at his death.  *Id*. at 369.

In *Reich v. Bankers Life & Casualty Co.*, 99 A.D.2d 457 (1st Dep't 1984), the court, following Thompson, held that the time limitation of §3211(d) does not apply in instances where the insurer failed to send proper notice, exactly what Plaintiff alleges happened here.

This Court recently cited Thompson approvingly and recognized its precedential value, in *Jakobovits v. Allianz Life Ins. Co. of N. Am.*, 2017 U.S. Dist. LEXIS 111471, *24-25, 2017 WL 3049538 (S.D.N.Y. 2017).

In *Lebovits v. PHL Variable Ins. Co.*, 2014 U.S. Dist. LEXIS 42552, *3-4, 2014 WL 1312073 (E.D.N.Y. Mar. 28, 2014), the court recognized that *Thompson* was "an action to recover on a policy whose insured had died more than two years after the default in payment" and was "a clear statement by one of New York's foremost jurists."

The case cited by Principal Life, *Falco v. Unum Provident Corp.*, 2007 U.S. Dist. LEXIS 23739, 2007 WL 1014568 (E.D.N.Y. Mar. 30, 2007), is inapposite. In that disability case, the plaintiff conceded the policy had lapsed for nonpayment of premium more than six years prior to commencement of the action. 2007 U.S. Dist. LEXIS at *6. The plaintiff argued only that his disability started before the policy lapsed. *Id*. In that case, where the policy was not wrongfully terminated, §3211(d) was appropriately applied to bar the action to recover brought more than two years after the policy lapsed.

Principal Life's alternative argument, that Plaintiff's claims are time-barred by New York CPLR §214(2), fails as well. §214(2) provides a three year statute of limitations for claims brought in "an action to recover upon a liability, penalty or forfeiture created or imposed by statute." This is generally applied where a statute imposes a liability or penalty with a private right of action. See *Buccino v. Continental Assurance Co.*, 578 F. Supp. 1518, 1526 (S.D.N.Y. 1986).

Here, the action is not one to recover upon a liability imposed by statue, rather it is an action for breach of contract. This distinction is evident in the case cited by Principal Life, *Pike v. N.Y. Life Ins. Co.*, 72 A.D. 3d 1043, 1047 (2d Dep't 2010), where the court distinguished between a cause of action for breach of contract, which is governed by a six-year statute of limitations, and a cause of action for breach of the Insurance Law, which is governed by the three-year statute of limitations of §214(2).

Accordingly, in our case, the single cause of action for breach of contract is not barred by the two-year period of §3211(d), or the three-year period of §214(2).

## 2.   **The Amended Complaint Provides Notice of and States a Claim**

Federal Rule of Civil Procedure 8(a)(2) requires a plaintiff to plead a "short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), "in order to give the defendant fair notice of what the claim is and the grounds upon which it rests," *Keiler v. Harlequin Enters. Ltd.*, 751 F.3d 64, 70 (2d Cir. 2014). "Fair notice" is "that which will enable the adverse party to answer and prepare for trial, allow the application of res judicata, and identify the nature of the case so that it may be assigned the proper form of trial." *Wynder v. McMahon*, 360 F.3d 73, 79 (2d Cir. 2004) (quoting *Simmons v. Abruzzo*, 49 F.3d 83, 87 (2d Cir. 1995)).

A complaint will survive a motion to dismiss if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Principal Life argues that Plaintiff's Amended Complaint conclusory rather than factual. In support, Principal Life points to paragraphs 24 through 33 of the Amended Complaint.  Principal Life Br. at 8-9.  Principal Life, however, ignores other factual paragraphs of the Amended Complaint.  For example, paragraphs 11 through 19 of the Amended Complaint allege:

> 11.   Pursuant to the terms of the Policy and applicable statutes, Principal was obligated to send notification of when premium payments were due and how much was due.

> 12.   A grace period notice dated December 26, 2015 requires payment of $632.11 by January 28, 2016.

13. The grace period notice states that "[i]f the required payment is not received in our Home Office, or we receive less than the amount requested above, your policy will terminate on 01/28/2016.

14. Pursuant to the terms of the Policy, premium payments of differing amounts could be made annually, semi-annually, or quarterly.

15. The Policy owner had the option of paying premium on a semi-annual basis.

16. Upon information and belief, the semi-annual premium due by January 28, 2016 was $323.96

17. The Policy owner had the option of paying premium on a quarterly basis.

18. Upon information and belief, the quarterly premium due by January 28, 2016 was $165.93.

19. The grace period notice demanded an incorrect and excessive amount.

These paragraphs give Principal Life fair notice that Plaintiff alleges the grace notice was deficient because it demanded a full year's premium, when a much lower amount would have sufficed.  In fact, it is clear that Principal Life is on notice of this factual allegation, because Principal Life defends this allegation in two places in its brief.  See Principal Life Br. at 3 ("Plaintiff's quibbles that, upon information and belief, Principal Life's Grace Period Notice should have requested premium in the amount of $323.96 or $165.93 instead of $632.11 is in error and, even if correct, would amount to nothing more than an inconsequential de minimis mistake") and 16 ("Plaintiff cannot be heard to complain about the stated amount payable of $632.11 which was the annual premium amount required to renew the Policy for another year").

Thus, the Amended Complaint contains sufficient factual allegations to give Principal Life "fair notice" to enable it "to answer and prepare for trial."

3.      **Principal Life Did Not Comply With the Notice Requirements of the Statute**

     a)   *The Grace Notice Demanded an Incorrect and Excessive Amount*

N.Y. Ins. Law §3211(b)(2) required Principal Life to send a grace notice that states the amount of the premium payment due to avoid a default and lapse of the policy.  The Amended Complaint alleges that Principal Life's grace notice demanded an incorrect and excessive amount. Specifically, Principal Life demanded $632.11, when payment of $165.93 would have sufficed to avoid a lapse.

In *Blumenberg v Aviva Life & Annuity Co. of N.Y.*, 41 Misc. 3d 1207(A) (Sup. Ct. Kings Co. 2013), the policyowners alleged "that defendant failed to comply with the terms of the policy and with the requirements of Insurance Law § 3211 in sending a lapse notice to plaintiffs in that . . . failed to state the payment necessary to keep the policy in force . . . Because of these alleged defects with the lapse notice, plaintiffs assert that defendant's attempt to cancel the policy was unlawful, and that the policy was thus in full force at the time of Jeanette Blumenberg's death." *Id*.

Like Principal Life here, the insurer in *Blumenberg* moved to dismiss the complaint for failure to plead a cause of action. The court denied the motion because "plaintiffs assert that the amount due listed on the lapse notice, $3,054.69, does not state the correct amount needed to be paid to avoid a lapse. Implicit in the notice requirements of Insurance Law § 3211 (b) (1) is that the lapse notice correctly state the amount of premium necessary to be paid avoid a lapse." *Id*. (citations omitted).  See also *Zeligfeld v Phoenix Life Ins. Co.*, 975 N.Y.S.2d 370, 370 (NY Sup., Kings County 2013) ("Section 3211 (b) (2) thus requires that the insurer to correctly state the amount of premiums to payed by the insured in order to avoid a default, and given the statutory purpose, an erroneous statement of the premium amount due may constitute grounds for finding

a notice ineffective."); *Weiss v. Lincoln Nat'l Life Ins. Co.*, 2016 U.S. Dist. LEXIS 126090, *14,

2016 WL 4991533, *4  (E.D.N.Y. 2016) ("a notice with a "significantly higher" amount due than

actually required is "[in]effective to cancel [a life insurance] policy."") (quoting *Zeligfeld v*

*Phoenix Life Ins. Co.*, 992 N.Y.S.2d 162 (NY Sup., Kings County 2014)); *Lebovits v. PHL*

*Variable Ins. Co*., 199 F. Supp. 3d 678, 680 (E.D.N.Y. 2016) ("[New York] state's highest court

would invalidate a notice that misstated the premium due, as long as the misstatement was not de

minimis."); *Blau v. Allianz Life Ins. Co. of N. Am.*, No. 14-CV-3202 (NGG) (VMS), 2018 U.S.

Dist. LEXIS 25936, 2018 WL 949222, at *4-5 (E.D.N.Y. Feb. 16, 2018), appeal dismissed, No.

18-699 (2d Cir. July 11, 2018) (same).

See also *Halberstam v. Allianz Life Ins. Co. of N. Am.*, 349 F. Supp. 3d 164, 170

(E.D.N.Y. 2018):

> Although the policy's language is not entirely clear, the statute is:
> the defendant demanded at least one month's premium more than it
> was entitled to. See Lebovits, 199 F. Supp. 3d at 681 ("[Section
> 3203's] requirements are deemed incorporated into the Policy.").
> Because an additional month's premium is not de minimis, the grace
> notice was legally invalid, and thus the policy did not lapse in
> September 2012. Cf. *id*. at 682 ("Because PHL's notices did not
> correctly state the amount due, it was not entitled to lapse the policy
> on August 22, 2010.").

For the same reason, Principal Life's motion fails here.

Principal Life argues that the insured had selected the premium mode frequency of

"annual" in the Policy application.  Principal Life Br. at 16.  However, the Amended complaint

alleges that the Policy owner had the option of paying premium on a semi-annual or quarterly

basis.  The Annual Statement for 2015 listed the options of paying premium on a semi-annual

basis, quarterly basis, and even on a monthly basis with pre-authorized withdrawal.  See Exhibit

M to the Declaration of John R. Williams submitted in support of Principal Life's motion ("Williams Decl.").

Since the Policy owner could have paid these substantially lower amounts, the grace notice, which demanded a much higher annual amount, was facially defective and did not comply with the statutory requirement.

Principal Life points out that in the prior year, the Policy owner chose to make an annual premium payment.  *Id*.  However, that choice did not take away the right to make a semi-annual or quarterly payment in the following year.

Principal Life incorrectly argues that the overstated premium amount is "nothing more than an inconsequential <u>de minimus</u> mistake." Principal Life Br. at 3.  The grace notice overstated the premium required by close to 400%.  The notice vastly overstated the minimum amount necessary to avoid a policy lapse.  Under no circumstance can that overstatement be deemed inconsequential or *de minimus*.  See, e.g., *Halberstam*, 349 F. Supp. 3d at 170 ("an additional month's premium is not de minimis").

While Principal Life deems its mistake to be a "minor quibble" (Principal Life Br. at 16), New York courts seize upon any deficiency by an insurance company, whether viewed as substantial or merely technical, in order to invalidate the lapse and cancellation of life insurance policies because New York has a long-standing and strong public policy against the forfeiture of insurance policies through lapse.

In New York law, it "has long been established that forfeiture of life insurance coverage for late payment of premiums is 'not favored in the law; and that courts are always prompt to seize hold of any circumstances''' which permit the policy to remain in force. *Speziale v National Life*

*Ins. Co.*, 159 Fed Appx. 253 (2d Cir. 2005) quoting *New York Life Ins. Co. v. Eggleston*, 96 U.S. 572, 577 (1877); see also *In re Preston's Will*, 29 N.Y.2d 364 (1972).

In order to promote this public policy, statutes requiring notice before forfeiture of a life insurance policy for nonpayment of premiums are to be construed strictly in favor of the insured. 45 C.J.S. Insurance §697 (2003).

Here, Principal Life did not comply with the statutory requirement to state in the grace notice the amount of the premium payment due to avoid a default and lapse of the Policy.  The grace notice, therefore, did not affect a lapse of the Policy.

b)  <u>*N.Y. Ins. Law §3211(a) and (b) Apply to Renewable One Year Term Policies*</u>

N.Y. Ins. Law §3211(a)(1) unambiguously states "<u>No</u> policy of life insurance" shall terminate or lapse because of premium payment default unless the statuary provisions are complied with. (Emphasis supplied.)

Principal Life attempts to take the statute out of its plain meaning by arguing that the statute does not apply to renewable one year term policies.  Principal Life has no legislative or caselaw basis for this assertion, and only points out that a party made a similar argument in 1892 in the case of *McDougall v. Provident Sav. Life Assur. Socy. of N.Y.*, 135 N.Y. 551, 32 N.E. 251 (1892).  In that case, however, the court, while not deciding the question, noted that "[w]e should hesitate to call in question the applicability of the statute to <u>any</u> class of life insurance policies. It was intended to and, undoubtedly, does subserve a useful purpose, in throwing about the contract between the insurer and the assured reasonable safeguards against a forfeiture or the lapsing of the interest of the assured."  135 N.Y. at 555 (emphasis supplied).

At least one New York court has applied §3211 to "term insurance annually renewable to age 80." See *Cohen v Companion Life Ins. Co.*, 2017 N.Y. Misc. LEXIS 2403, *3, 2017 NY Slip Op 50832(U), 2, 56 Misc. 3d 1202(A) (N.Y. Sup., Nassau County 2017).

This Court should do the same and not take the statue out of its plain, unambiguous meaning.

**4.      The Policy Did Not Lapse Following One Year From the Purported Default**

This action is also not barred by §3211(a). While an insurer may lapse a policy after a year of non-payment, that rule does not apply in our case where: (a) Principal notified the Policy owner that the Policy had lapsed and no premium would be accepted without new underwriting, and (b) Principal rejected the Policy owner's actual attempt to pay premium.

In *Halberstam*, 349 F. Supp. 3d at 171-72, the court rejected the exact argument raised by Principal herein, because the insurer prevented the insured from paying premiums when it advised the insured that payment will not be accepted without new underwriting.

Here too, Principal advised the Policy owner that that payment will not be accepted without new underwriting.  See Williams Decl. Exhibit N (requiring completion of Application for Reinstatement and advising that if the Application is not approved, any premiums submitted will be refunded).

Moreover, not only did Principal advise that payment would not be accepted without new underwriting, Principal in fact rejected a premium payment made by the insured within the year it was due. Principal cannot now argue that the Policy lapsed for failure to pay premium within one year. See *Halberstam v. Allianz Life Ins. Co. of N. Am.*, 2017 U.S. Dist. LEXIS 222734, *21-22, 2017 WL 10187689 (E.D.N.Y. 2017):

> Defendant argues that regardless of the contents of the notice, the policy automatically lapsed after a year of nonpayment as provided

> in New York Insurance Law § 3211. However, plaintiff's complaint
> alleges that "[t]he [t]rust offered to make all payments due and
> owing on the [p]olicy on November 1, 2012 [within the one-year
> payment period] . . . [but] Allianz refused to unconditionally accept
> payment and place the [p]olicy in active status." This factual
> allegation is sufficient to support an inference that plaintiff tendered
> payment in a manner that would prohibit the application of the one-
> year limitation rule.

See also *Lebovits*, 199 F. Supp. 3d at 681 (finding unaccepted wire transfer constituted a

payment tendered so that § 3211's one-year rule did not apply).

*Halberstam* was grounded in long established New York law.

The Prevention Doctrine has existed in New York for more than a century and embodies

the foundational principle that "[t]he law contemplates fair dealing and not its opposite." *Grad v.*

*Roberts*, 14 N.Y.2d 70, 75 (1964). Simply put, it states that "a party to a contract cannot rely on

the failure of another to perform a condition precedent where he has frustrated or prevented the

occurrence of the condition." *Kooleraire Serv. & Installation Corp. v. Bd. of Ed. of City of New*

*York*, 28 N.Y.2d 101, 106 (1971); *see also Walsh v. Kelly*, 49 N.Y.2d 959, 961 (1980) (discussing

seller's "implied obligation not to interfere with or prevent performance by the purchaser of the

condition specified in the contract"); *Goodman v. Marcol, Inc.*, 261 N.Y. 188, 191 (1933) (noting

the "familiar principle" that "no one can avail himself of the non-performance of a condition

precedent, who has himself occasioned its non-performance"). "The rule is grounded in many

cases that in every contract there is an implied undertaking on the part of each party that he will

not intentionally and purposely do anything to prevent the other party from carrying out the

agreement on his part." *Grad*, 14 N.Y.2d at 75.

"When the Prevention Doctrine applies (when a defendant prevents a plaintiff from

fulfilling a contractual condition), and when a plaintiff shows that it was otherwise 'ready, willing

and able to fulfill its contractual obligations,' the contract remains enforceable and the plaintiff is

entitled to the remedy of specific performance of the contract, notwithstanding the failure of the condition." *In re Blue Dog at 399 Inc.*, 540 B.R. 67, 75 (Bankr. S.D.N.Y. 2015). The Doctrine is "akin to an estoppel."  "A party who frustrates the performance of a condition cannot rely upon the failure to satisfy the condition as a defense to a contract or as a ground to terminate a contract. Instead, the contract remains in place, and the party who prevented the performance of the condition is barred from asserting the failure of condition as a breach or as a ground for termination." *Id.*

In *Kooleraire*, for example, the plaintiff had a contract with the New York City Board of Education that was conditioned upon the plaintiff obtaining the Board's comptroller's indorsement certifying that the Board had sufficient funds to pay the contract.  Although the Board had sufficient funds available, the Board directed the comptroller to withhold the necessary indorsement.  The Board then relied upon the plaintiff's failure to obtain the indorsement as justification for rescinding the contract. *Kooleraire*, 28 N.Y.2d at 105.

The Court of Appeals held that the Board could not use the plaintiff's failure to obtain the indorsement as justification for rescission. The indorsement provision was inserted into the contract with one purpose (namely, ensuring that the Board had sufficient money to fund the work), and could not be used by the Board for a wholly different purpose (namely, wiggling out of a contract that it no longer wanted). *Id* at 107.  The parties never intended to give the comptroller general veto power over the contract, the Board had a duty not to frustrate the plaintiff's performance. *Id.*

Similarly, in *Reinhardt v. Reinhardt*, 204 A.D.2d 1028, 1028 (4th Dep't 1994), the petitioner brought suit seeking to enforce the maintenance provisions of her divorce decree.  The decree provided that petitioner was entitled to maintenance in an amount corresponding to her

income, as reflected on her federal income tax return. The petitioner, however, had refused to provide her ex-husband with a copy of the tax return, and her husband therefore did not pay her.

The Appellate Division denied the petition, holding that the petitioner's own "failure to provide the required documentation prevented respondent from fulfilling his obligation to pay maintenance and thereby excused his performance." *Id.* By refusing to provide the required financial information, she "frustrated respondent's performance" and, thereby, "relieved respondent of his obligation to pay maintenance." *Id.*

Here, the policyholder was ready, willing, and able to perform her obligations under the Policy. See, also, *Clarke v Rodriguez*, 16 N.Y.3d 815, 816 (2011) ("as there is support for the undisturbed finding of Supreme Court that defendant frustrated plaintiff's efforts to perform the contract, plaintiff is entitled to the remedy of specific performance").

Where one party to a contract is required to tender payment, the other party can vitiate the tender requirement by either refusing to accept or otherwise preventing the tender. In *Brinley v. Nevins*, 162 A.D. 744, 746-47, 147 N.Y.S. 985, 987 (1st Dep't 1914), defendant gave plaintiff an option to purchase shares of stock. When plaintiff offered to pay for the stock, defendant refused to deliver. Defendant argued "that all the plaintiff did was to give notice that he was ready to perform on his part, and, inasmuch as he did not actually make a legal tender, defendant was not bound to deliver the stock." The court rejected this argument, holding:

> This undoubtedly would be so except for the fact that the defendant absolutely refused to deliver it. Having refused, an actual tender would have been a mere matter of form, and the law does not require one to go through an idle ceremony of that kind.
>
> * * *
> In the case at bar, plaintiff was ready, able, and willing to make a tender at the time of the acceptance.

If these views be correct, then the failure to actually tender is immaterial, for defendant's repudiation made that unnecessary. This rule is tersely stated in *Currie v. White*, 45 N. Y. 822, by Rapallo, J., who said:

> 'A tender of the money was not necessary; the payment and delivery were to be simultaneous. The offer and readiness to pay were sufficient, and by failing to respond to that offer the defendant dispensed with the necessity of a formal tender. The plaintiff showed that he was ready to pay, having made an arrangement with his bank to certify his check for the required amount on that day. * * * If the defendant had said that he would deliver the stock on payment of the money, then it would have been necessary to tender it; but, instead of that, he said he would go and consult his lawyer, and he went away, taking the stock with him, and did not return or send any answer. This constituted a refusal to perform.'

See, also, *Stokes v. Mackay*, 147 N. Y. 223, 41 N. E. 496 (1895); *Baumann v. Pinckney*, 118 N. Y. 604, 23 N. E. 916 (1890); *Shaw v. Republic Life Ins. Co.*, 69 N. Y. 286.

See also *Aborn v. Mason*, 1 F. Cas. 37, 39 (C.C.S.D.N.Y. 1878):

> In the case of mutual and concurrent promises, 'the word 'tender,' as used in such a connection, does not mean the same kind of offer as when it is used with reference to the payment or offer to pay an ordinary debt due in money, where the money is offered to a creditor who is entitled to receive it, and nothing further remains to be done, but the transaction is completed and ended; but it only means a readiness and willingness, accompanied with an ability on the part of one of the parties, to do the acts which the agreement requires him to perform, provided the other will concurrently do the things which he is required by it to do, and a notice by the former to the latter of such readiness. Such readiness, ability and notice are sufficient evidence of, and indeed constitute and imply, an offer or tender, in the sense in which those terms are used in reference to the kind of agreements which we are now considering.'

Thus, the offer to pay premium, in our case, was sufficient tender as to bar the insurer from claiming a lapse due to nonpayment of premium within one year of default.

Further, once the insurer declared the policy lapsed and refused to accept premium payment, the policy owner was under no further obligation to pay premium.  See *Shaw v. Republic Life Ins. Co.*, 69 N.Y. 286, 292–93 (1877):

> Where one party to a contract declares to the other party to it, that he will not make the performance on the future day fixed by it therefor, and does not, before the time arrives for an act to be done by the other party, withdraw his declaration, the other party is excused from performance on his part, or offer to perform, and may maintain his action for a breach of the contract when the day has passed. Such is the well-established rule; . . . There is no doubt that the defendant repudiated all obligation to the plaintiff, and so declared to her. It would have been a useless act for her after that to have sought the defendant and made offer to pay the annual premium.

See also *Sullivan v. Indus. Ben. Ass'n*, 26 N.Y.S. 186, 189-90 (Gen. Term 1893):

> The plaintiff, a short time before this date, called on Mr. Sperry, who had given her the receipt for the first premium, and offered to pay the premium soon becoming due. He declined to receive it, saying that he had no receipt from the company for her among the receipts that had been sent him, and therefore could not accept her premium.
>
> * * *
>
> There was evidence tending to show, and the court found, that at the time when the second premium would have become due under the certificate the company disowned its obligation under it, and failed to send to their agent, Mr. Sperry, a receipt, on the ground that the certificate was not an existing obligation upon their part. If, prior to 1st November, the defendant repudiated its contract, mailed no notice to the plaintiff, and sent no receipt to its agent for the plaintiff, although it did for others, according to its custom, it should not be permitted to say that there was a forfeiture by reason of the nonpayment. . . Ordinarily a tender is not necessary when the acts and conduct of the other party indicate that it will be futile. *Baumann v. Pinckney*, 118 N. Y. 604, 23 N. E. 916; *Insurance Co. v. Smith, 44 Ohio St. 157*, 5 N. E. 417. A company cannot take advantage of a forfeiture that it encourages by a failure to give its accustomed notice before the premium is due. *Helme v. Insurance Co.*, 61 Pa. St. 107.

It has long been the law in New York that a policy owner does not have an obligation to pay premiums when the insurer refuses to accept those premiums. See, *Reed v. Provident Sav. Life Assur. Soc. of New York*, 190 N.Y. 111, 120, 82 N.E. 734, 736–37 (1907) ("The refusal of the company to accept the premium due in January, 1895, was a perfectly good reason for not offering to pay subsequent premiums.  If the company's refusal had a legal basis, the contract of insurance was at an end by reason of the violation of the terms of the contract.  Its attitude was, and has continued to be, one of repudiation of its obligation to the plaintiff.  After its refusal, he was not required to perform the vain and useless act of making further tenders on recurring premium dates. *Shaw v. Republic Life Ins. Co*., 69 N. Y. 286–293; *Hayner v. Am. Popular Life Ins. Co., Id*. 435–439; *Miesell v. Globe Mut. Life Ins. Co*., 76 N. Y. 115, 120."); See also, *Robinson v. Mut. Reserve Life Ins. Co*., 182 F. 850, 857 (S.D.N.Y. 1910), *aff'd*, 189 F. 347 (2d Cir. 1911) ("There was no obligation upon the part of the insured after his policy was declared lapsed by the company because of his refusal to pay an invalid assessment to tender subsequent dues or assessments."); *Primeau v. Nat'l Life Ass'n*, 28 N.Y.S. 794, 798 (Gen. Term 1894), *aff'd*, 144 N.Y. 716, 39 N.E. 858 (1895) ("It is further claimed by the defendant that the plaintiff cannot maintain this action, because he has made no tender of premiums coming due since February 1, 1893.  The defendant informed the plaintiff that his policy had lapsed and been canceled, made no further calls upon him, and substantially admits that, if money for subsequent premiums had been tendered, it would not have received it.  We think that a tender for subsequent premiums was not necessary. *Meyer v. Insurance Co*., 73 N.Y. 516, 528, and cases cited; 2 May, Ins. § 358."); *C.f.*, *Kelly v. Sec. Mut. Life Ins. Co.*, 186 N.Y. 16, 19, 78 N.E. 584, 584–85 (1906) ("There is no allegation of a refusal to receive premiums.")

Here, a premium payment was offered and rejected obviating the obligation to tender premiums.

*Kenyon v. Nat'l Life Ass'n of Hartford*, 39 A.D. 276, 292, 57 N.Y.S. 60 (4th Dept. 1899) ("it would be useless and unavailing to make tender while the declaration [by the insurer that the policy was lapsed and no premiums will be accepted] was not withdrawn").

The Court ruled, "there is no pretense or claim on the part of the defendant that it would have received any of the subsequent payments of premiums falling due, even if the insured had tendered payment of the same. May, in his work on Insurance (§ 358), says: Payment, or tender of payment, of premiums is not necessary where the insurers have already declared the policy forfeited, or done any other act which is tantamount to a declaration on their part that they will not receive it if tendered. " *Kenyon*, 39 A.D. at 289–90. "Bacon, in his work on Life Insurance (§ 364), says: After one refusal to accept the premium the insured is not bound to make prompt tenders of subsequent premiums on each pay day." *Kenyon*, 39 A.D. at 292.

Allianz also conditioned payment upon approval of reinstatement, which would include a full medical underwriting. In *Te Bow v. Washington Life Ins. Co.*, 59 A.D. 310, 313, 69 N.Y.S. 289, 290–91 (3rd Dept. 1901), *aff'd*, 172 N.Y. 623, 65 N.E. 1123 (1902), the insurer declared the policy lapsed and told the policy owner it will not accept premium payment without underwriting approval. Although its basis for declaring the policy lapsed turned out to be wrong, the insurer claimed that the failure by the policy owner to tender subsequent premiums caused the policy to lapse for good. The insurer claimed, like Allianz does now, that it did not refuse to accept payment, it only conditioned payment on satisfactory medical underwriting and therefore, the policy owner was obligated to tender subsequent premiums and its failure to do so was fatal. The Court, in rejecting the insurer's claim that the policy lapsed for failure to tender subsequent premiums ruled

17

that, "A declaration that a policy had lapsed, and can be reinstated by furnishing a satisfactory medical certificate, imports of necessity a denial of the right to reinstatement except upon the condition named.  With the unauthorized cancellation of the policy, and a refusal to accept the premium except upon a condition which was unauthorized, the authorities are uniform to the effect that the defendant is estopped from claiming as a defense to this action that the premium has not been paid."

Here, there is no factual dispute that the tendered the amount owed and that Principal Life rejected the tender, thereby alleviating the obligation to make any further payment.

The Amended Complaint alleges:

39.     In or about February 2016, a premium payment of $632.11 was sent in to Principal Life to pay Policy premium.

40.     Principal Life rejected the February 2016 premium and returned it.

41.     Principal Life's rejection of the February 2016 premium was a breach of the Policy terms, which required Principal to accept Policy premiums.

42.     Principal Life's rejection of the February 2016 premium put the Policy owner on notice that Principal Life would not accept any future premium payments.

43.     Principal Life's rejection of the February 2016 premium put the Policy owner on notice that any future premium payment to Principal Life would be futile.

See also Williams Decl. Exhibits O and P (copy of February 2016 premium check and Principal Life return of same.

Accordingly, in our case, the one-year rule of §3211(a) does not apply.

## <u>CONCLUSION</u>

For the reasons stated above, Principal Life's motion should be denied in its entirety.


Dated:  Kew Gardens, New York
        June 18, 2021

                              Respectfully Submitted,

                              **LIPSIUS-BENHAIM LAW, LLP**

                              By:    <u>/s/ Phillip M. Manela</u>
                                      Ira S. Lipsius
                                      Phillip M. Manela
                              80-02 Kew Gardens Road, Suite 1030
                              Kew Gardens, New York  11415
                              (212) 981-8440
                              *Attorneys for Plaintiff Jacob Moskowitz*