UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

JACOB MOSKOWITZ,

       Plaintiff,

  -v-                                                21-CV-3030-LTS

PRINCIPAL LIFE INSURANCE COMPANY,

       Defendant.

-------------------------------------------------------x

<u>MEMORANDUM ORDER</u>

       Plaintiff Jacob Moskowitz ("Mr. Moskowitz" or "Plaintiff") brings this action against Defendant Principal Life Insurance Company ("Principal Life" or "Defendant") asserting state law claims for breach of contract and a violation of New York State Insurance Law section 3211. (Docket entry no. 18 ("Am. Compl.").) Plaintiff's claims arise from Defendant's denial of payment under the terms of a $1,000,000 life insurance policy that had covered his now-deceased wife, Odel Moskowitz ("Ms. Moskowitz"), and of which he was the sole beneficiary. Pursuant to Federal Rule of Civil Procedure 12(b)(6), Principal Life moves to dismiss the Complaint for failure to state a claim upon which relief may be granted, contending, <u>inter</u> <u>alia</u>, that no benefits are payable because the policy was properly terminated prior to Ms. Moskowitz's death, under both the terms of the policy and the relevant state insurance law, following non-payment of an annual premium. The Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1332. The Court has reviewed carefully all of the parties' submissions in connection with the instant motion and, for the following reasons, grants Defendant's motion in its entirety.

BACKGROUND[1]

On December 26, 2013, Principal Life issued a life insurance policy, styled "Term Life Insurance Policy Renewable to Age 80," to Ms. Moskowitz when she was 47 years old. (Am. Compl. ¶ 7; docket entry no. 35-4, Williams Decl. Ex. D ("Policy") at 2, 4.) The death benefit payable under the policy was $1,000,000. (Am. Compl. ¶¶ 8, 10; Policy at 4, 6, 16.) Consistent with its terms, the Policy was renewable on a yearly basis subject to an annual premium payment, which was fixed at $632.11 for each of the first ten years. (Policy at 4-5.) Policy owners could elect to change the frequency of their premium payments with Principal Life's approval, although any payment frequency other than annual involves an additional charge. (Id. at 5, 7.) The Policy provided that, for payment of each premium after the first, the policyholder was afforded a grace period of 31 days, beginning when Principal Life mailed a "notice of impending policy termination." (Id. at 7.) The Policy further provided that, should the policy owner fail to make a premium payment when due or within the grace period, the Policy would terminate on the premium due date. (Id.)

Ms. Moskowitz made her first $632.11 annual premium payment at the initiation of the Policy on December 26, 2013 (the "Policy Date"), for the coverage year ending in December 2014. (Am. Compl. ¶ 7; see also Policy at 4, 6.) She made her second $632.11 annual premium payment during a grace period in early 2015, after Principal Life mailed a notice

---

[1] The facts as set forth in the Complaint are taken as true for the purposes of the motion to dismiss. The factual summary is supplemented by the terms of Ms. Moskowitz's life insurance policy and related documents, which may be considered because they are referenced in the Complaint. DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010) ("In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint.").

indicating that the Policy would terminate if payment was not received.[2]  (Docket entry no. 35-7, Williams Decl. Ex. G ("2014 Grace Period Notice").)

The following year, Ms. Moskowitz again failed to make a timely premium payment, and Principal Life mailed a grace period notice, dated December 26, 2015.  Ms. Moskowitz made no timely payment in response to that notice; Mr. Moskowitz contends that her nonpayment did not properly result in the termination of the Policy because the notice was defective.  (Am. Compl. ¶¶ 12, 20; docket entry no. 35-12, Williams Decl. Ex. L ("2015 Grace Period Notice").)  Except for different dates, the 2015 Grace Period Notice is identical to the 2014 Grace Period Notice.  The 2015 Grace Period Notice stated that, in order to keep the Policy "in force," Ms. Moskowitz was required to remit a $632.11 premium payment to Principal Life's home office by January 28, 2016.  (Am. Compl. ¶¶ 12-13; 2015 Grace Period Notice at 2.)  The Notice further provided that, should she fail to make the payment or pay less than the requested amount, the Policy would terminate on January 28, 2016.  (Am. Compl. ¶ 13; 2015 Grace Period Notice at 2.)

Ms. Moskowitz did not pay her annual premium by January 28, 2016, and, in a letter dated the same day, Principal Life informed her that her Policy had terminated for lack of payment.  (Docket entry no. 35-14, Williams Decl. Ex. N ("Termination Notice") at 2.)  The Termination Notice set forth instructions for reinstatement of the Policy; neither party claims

---

[2]  The Court notes that the 2014 grace period notice, unlike the subsequent grace period notice discussed below that is at the core of Mr. Moskowitz's claims, is not explicitly referenced in the Complaint.  However, it is evident that Plaintiff relied on its "terms and effect" in drafting the Complaint, because Ms. Moskowitz's payment during this first grace period kept the Policy and her insurance coverage intact.  Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) ("[W]e reiterate here that a plaintiff's reliance on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion.").

here that Ms. Moskowitz attempted to reinstate the Policy. (Termination Notice at 2.) Instead, in or about February 2016, Ms. Moskowitz sent a $632.11 annual premium payment to Principal Life but her check was returned, along with a letter, dated February 8, 2016, acknowledging receipt of the check but noting that the Policy had been terminated. (Am. Compl. ¶¶ 39-40; docket entry no. 35-16, Williams Decl. Ex. P ("2016 Payment Rejection Letter").)

There appears to have been no further contact between Ms. Moskowitz and Principal Life. Ms. Moskowitz died on or about July 11, 2019. (Am. Compl. ¶ 44.) Mr. Moskowitz filed an initial complaint on April 8, 2021, and the Amended Complaint on May 10, 2021. His core factual allegation is that Principal Life's 2015 Grace Period Notice was defective under the Policy and under relevant New York insurance law provisions because it demanded as a premium payment an "incorrect and excessive amount," and was not mailed to Ms. Moskowitz. (Am. Compl. ¶¶ 19-35.) Principal Life filed the instant motion to dismiss on March 31, 2022. After briefing had been completed, this case was reassigned to the undersigned in July 2022. Principal Life contends that the Policy was validly terminated under the Policy and the relevant state insurance law provision, after non-payment of the annual insurance premium.

DISCUSSION

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 622, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A complaint that contains only "naked assertions" or "a formulaic recitation of the elements of a cause of action" does not suffice. Twombly, 550 U.S. at 555. In reviewing a motion pursuant to Rule 12(b)(6), the court "may consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference

. . . and documents possessed by or known to the plaintiff and upon which she relied in bringing the suit." ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F. 3d 87, 98 (2d Cir 2007). "In deciding a Rule 12(b)(6) motion, a court assumes the truth of the facts asserted in the complaint and draws all reasonable inferences from those facts in favor of the plaintiff." Sara Designs, Inc. v. A Classic Time Watch Co. Inc., 234 F. Supp. 3d 548, 554 (S.D.N.Y. 2017) (citing Harris v. Mills, 572 F.3d 66, 71 (2d Cir 2009)).

    Plaintiff's primary allegation of wrongdoing concerns the validity, under the Policy and New York insurance law, of the notice that Principal Life provided to Ms. Moskowitz before it terminated her life insurance policy.  According to Mr. Moskowitz, because the notice demanded an excessive premium payment and was not mailed to his wife, it could not have served as a basis to terminate the Policy.  Therefore, he asserts, the Policy has not lapsed and he is entitled to the death benefit under its terms.  (Docket entry no. 38 ("Pl. Opp.") at 1.)  The Court will first address Plaintiff's allegations and corresponding arguments as to notice pursuant to the Policy's own terms, and then turn to his argument regarding the relevant New York insurance law provision.[3]

---

[3] The parties spend a considerable portion of their briefing on whether (1) this suit is barred by the statute of limitations applicable to actions to recover on a lapsed policy as set forth in New York Insurance Law section 3211(d), and (2) the Policy lapsed automatically after one year of non-payment under section 3211(a).  The Court addresses the core issue of defective notice first because determination of the validity of the notice is a predicate to consideration of both of Plaintiff's principal arguments, as the thrust of Plaintiff's claim is that defective notice prevented the Policy from lapsing in the first instance.  (See generally Pl. Opp. At 2, 10.)  As explained below, Plaintiff fails to state a claim upon which relief may be granted because the notice was not defective under either the Policy or the relevant insurance law provision, and the policy lapsed for lack of timely payment.   Therefore, the Court need not and does not address the parties' remaining arguments.

Notice Under the Terms of the Policy

At the outset, the Court notes that the Policy contains no choice-of-law provision. Because both parties cite New York law exclusively to support their respective arguments, the Court will apply New York law in interpreting the Policy and its provisions.  New York courts interpret contracts based on their plain meaning and, when a contract's terms are unambiguous, courts apply them as written, without considering any extrinsic evidence.  See W.W.W. Assocs., Inc. v. Giancontieri, 566 N.E.2d 639, 642 (N.Y. 1990).

Plaintiff contends that the Notice was defective because it demanded payment of the entire annual premium rather than payment of an installment.  The Policy, as issued, provided $1,000,000 in life insurance coverage, renewable for successive one-year terms, in exchange for the payment of annual premiums that were fixed at $632.11 each year for the first ten years. (Policy at 4 ("Premium: $632.11"; "Premium Frequency: Annual").)  Plaintiff's decedent remitted exactly this amount twice, once to commence the Policy in 2013, and again to keep it in force in early 2015.  The Policy clearly provides that a policy owner "may change the frequency of the premium payments with [Principal Life's] approval," and that selecting any frequency other than annual will require "an additional charge."  (Id. at 7.)  These additional charges apply to semi-annual or quarterly frequency selections, and are detailed on a separate page of the Policy.  (Id. at 5.)

Plaintiff does not contend that Ms. Moskowitz attempted to alter her premium frequency or tender an installment payment at any point.  Instead, Plaintiff insists that Ms. Moskowitz was permitted under the Policy to pay a either a $323.96 semi-annual premium or a $165.93 quarterly premium to keep the Policy in force and that the Principal Life's notice should have informed her that she had such options.  (Compl. ¶¶ 14-18; Pl. Opp. at 12.)  In support of

this assertion, Plaintiff points not to the Policy but to Ms. Moskowitz's Annual Statement for 2015, which lists in a table different frequency options and the additional premium charges associated with them, all under the heading of "Important Information." (Pl. Opp. at 13-14.) Not only does Plaintiff ignore the explicit provisions in the Policy itself—which is the governing contract between the parties—Plaintiff also fails to acknowledge that, even in the Annual Statement, Ms. Moskowitz is assigned an "Annual Premium" in the amount of $632.11. At bottom, Plaintiff confuses the option to modify the frequency of premium payment subject to Principal Life's approval with a supposed unilateral right to do so. His interpretation has no support in the Policy. Thus, under the plain terms of the Policy and in the absence of a request for other payment arrangements, Ms. Moskowitz was expected to make a timely payment of $632.11 to renew the policy, so Principal Life's 2015 Grace Period Notice was neither deficient in its content nor excessive in its demand.

Notice Under New York Insurance Law

Plaintiff similarly argues that Principal Life's 2015 Grace Period Notice was defective under New York Insurance Law section 3211(b)(2) in that it sought an excessive premium payment to avoid lapse of the Policy. (Pl. Opp. at 12.) Section 3211(b) provides that:

> (b) The notice required by paragraph one of subsection (a) hereof shall . . . (2) state the amount of such payment, the date when due, the place where and the person to whom it is payable; and shall also state that unless such payment is made on or before the date when due or within the specified grace period thereafter, the policy shall terminate or lapse except as to the right to any cash surrender value or nonforfeiture benefit.

N.Y. Ins. Law § 3211(b).[4] Plaintiff's claim here rests on the same theory described above—that, because Ms. Moskowitz was allegedly permitted to make premium payments far lower than

---

[4] The parties dispute whether section 3211 applies to renewable one year term life insurance policies. (Docket entry no. 33 ("Def. Mem.") at 11; Pl. Opp. at 9.) Defendant indicates that no court has decided whether section 3211's notice requirements apply to

$632.11 to keep the Policy in force, Principal Life's 2015 Grace Period Notice ran afoul of legal requirements by demanding an incorrect and excessive amount.  Plaintiff cites a litany of cases holding that a notice requesting an excessive amount is defective under section 3211 and prevents an insurance policy from lapsing.  See, e.g., Blumenberg v. Aviva Life & Annuity Co. of New York, 977 N.Y.S.2d 665 (Sup. Ct. 2013); Zeligfeld v. Phoenix Life Ins. Co., 975 N.Y.S.2d 370 (Sup. Ct. 2013); Weiss v. Lincoln Nat'l Life Ins. Co., No. 14-CV-4944-ERK-JO, 2016 WL 4991533 (E.D.N.Y. Sept. 15, 2016); Lebovits v. PHL Variable Ins. Co., 199 F. Supp. 3d 678 (E.D.N.Y. 2016); Blau v. Allianz Life Ins. Co. of N. Am., No. 14-CV-3202-NGG-VMS, 2018 WL 949222 (E.D.N.Y. Feb. 16, 2018).

    The Court need not assess nor compare the magnitude of the overstated premium amounts in the cited cases because, as Defendant correctly points out, every single one of them involves a universal or flexible life insurance policy, under which insurers are "required to determine the account value needed to maintain sufficient funds for premium deductions," which can lead insurers to "subjectively overcharge[e] premiums due."  Singer v. Massachusetts Mut. Life Ins. Co., No. 21-CV-08450-PMH, 2023 WL 3506404, at *7 (S.D.N.Y. May 17, 2023).  In contrast, Ms. Moskowitz's term life insurance policy "operates pursuant to a fixed premium frequency schedule which is set forth clearly and unambiguously in the Policy and its specifications."  Id.  Unsurprisingly, Plaintiff points to no case in which a court invalidated a grace period notice under section 3211 because an insurer failed to state a lower, different premium frequency and amount than the one chosen by the policy owner.  Indeed, the statute

---

such policies, and asks this Court to hold that they do not.  (Docket entry no. 39 ("Def. Reply.") at 6.)  As have other courts, the Court assumes without deciding that section 3211 applies to the instant Policy.  See, e.g., Singer v. Massachusetts Mut. Life Ins. Co., No. 21-CV-08450-PMH, 2023 WL 3506404, at *6-7 (S.D.N.Y. May 17, 2023).

establishes different notice requirements for scheduled premium policies and for policies in which the amount and frequency of premiums vary.  See, e.g., N.Y. Ins. Law. § 3211(a)(1).  The Court therefore holds that Plaintiff has not proffered facts that could plausibly support a claim for relief under section 3211.  Principal Life's 2015 Grace Period Notice was not defective for demanding a previously agreed-upon $632.11 annual premium payment.[5]

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss the Amended Complaint is granted in its entirety.  The Clerk of Court is respectfully directed to terminate docket entry no. 32, enter judgment in favor of Defendant, and close case no. 21-CV-3030.

SO ORDERED.

Dated: New York, New York
July 31, 2023

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
Chief United States District Judge

---

[5] The Court notes that Plaintiff failed entirely to address in his Opposition the separate issue of whether Defendant failed to mail the notice to Ms. Moskowitz as required under the terms of the Policy or under New York insurance law.  The Court thus has before it only a single sentence in the Amended Complaint to support the claim: "The grace notice was not mailed to the policy owner."  (Am. Compl. ¶ 21.)  This lone, conclusory claim of insufficient mailing is not sufficient to state a claim for relief based on failure to mail in light of the Amended Complaint's acknowledgement that a payment attempt was made shortly after the grace period ended.  (Am. Compl. ¶ 39.)